983 F.2d 1067
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re MICRO-TIME MANAGEMENT SYSTEMS, INC., Debtor.
MICRO-TIME MANAGEMENT SYSTEMS, INC.; Otis Kirkland,
Individually and on behalf of all other Creditors,
(91-2261), Plaintiffs-Appellants,
and
Creditors of Micro-Time Management Systems, Inc., (91-2260),
Plaintiffs-Appellants,
v.
ALLARD & FISH, P.C.; David W. Allard, Jr.; and Deborah L.
Fish, Jointly and Severally, Defendants-Appellees.
ALLARD & FISH, P.C.; David W. Allard, Jr.; and Deborah L.
Fish, Third-Party Plaintiffs,
v.
LAWRENCE J. STOCKLER AND ASSOCIATES, P.C.; Lawrence J.
Stockler, Jointly and Severally; Schafer &
Weiner, P.C.; Arnold S. Schafer,
Individually, Jointly and
Severally,
Third-
Party Defendants.
 Nos. 91-2260, 91-2261.
 United States Court of Appeals, Sixth Circuit.
 Jan. 12, 1993.
 
 Before NATHANIEL R. JONES and SILER, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Micro-Time Management Systems, Inc. ("MTMS", "Debtor"), Otis Kirkland, individually and on behalf of all other creditors, and "Creditors of MTMS" (hereinafter collectively referred to as "Plaintiffs") appeal an order dismissing, under the doctrine of res judicata, their complaint alleging that Allard & Fish, P.C., David Allard, Jr., and Deborah Fish (hereinafter collectively referred to as "Allard & Fish"), counsel for MTMS' trustee in bankruptcy, committed malfeasance by failing to investigate a potential conflict of interest on the part of the trustee.[1] For the reasons stated herein, we affirm.
 
 I.
 
 2
 On February 19, 1988, MTMS filed its petition in bankruptcy court pursuant to Chapter 11 of the Bankruptcy Code. Motions for the appointment of a trustee for MTMS were filed by Comerica Bank ("Comerica"), a major secured creditor of MTMS, and by Roaring Springs Blank Book Company ("Roaring Springs"), the chair of the Unsecured Creditors Committee. In late April or early May, 1988, Arnold S. Schafer of Schafer & Weiner, P.C., bankruptcy counsel for MTMS, contacted John C. Bohl, Jr., and informed him that a trustee was being sought and inquired whether Bohl would be able to serve as trustee.
 
 
 3
 In May 1988, Schafer again contacted Bohl. Bohl acknowledged his interest but advised Schafer that he, as a general partner of RGB Associates, had provided consulting services to Comerica on a totally unrelated foreclosure matter which was winding down. Schafer told Bohl that the relationship did not represent a conflict of interest.
 
 
 4
 On May 20, 1988, Bohl met Kirkland, the owner of MTMS, and representatives of Comerica and Roaring Springs. As a result of this meeting, the parties stipulated to the court's appointment of Bohl as trustee.
 
 
 5
 On May 24, 1988, prior to his retention of counsel, Bohl filed an "Affidavit of Disinterested Person" which did not set out any contemporaneous relationships with Comerica Bank. On that same date, Bohl was appointed trustee.
 
 
 6
 On June 29, 1988, an order was entered appointing David Allard, Jr., as counsel for the trustee. Bohl states that he did not discuss the issue of the alleged conflict with Comerica with Allard or with Deborah Fish, who at that time was an associate attorney in Allard's office working on the case. The Plaintiffs contend that is not true because the order authorizing the appointment of Allard as counsel states that Allard was to inquire into a Comerica claim on behalf of the estate.
 
 
 7
 In a letter to the bankruptcy court dated October 6, 1988, Kirkland sought to bring Bohl's alleged conflict of interest to the bankruptcy court's attention because Kirkland was suspicious of dealings between the Bohl and Comerica. In his letter, Kirkland referred the court to Bohl's relationship with Comerica, and questioned Bohl's loyalty to the Debtor's estate in light of that relationship.
 
 
 8
 On October 11, 1988, the court sent a letter to Kirkland and a separate letter to Marion Mack, the Assistant U.S. Trustee. In the letter, the judge instructed that the matter should be handled by the U.S. Trustee because he is responsible for overseeing trustees. Also on October 11, 1988, at a hearing in the Debtor's case, the court handed out copies of the Kirkland letter and the court's response to all parties.
 
 
 9
 Meanwhile, with MTMS', Kirkland's, Schafer's, the bankruptcy court's, the U.S. Trustee's, and the Unsecured Creditors Committee's knowledge of the alleged conflict, the bankruptcy proceedings continued to the apparent satisfaction of all interested parties. For example, on October 18, 1988, Comerica and MTMS reached a settlement which Kirkland approved. Schafer approved this settlement agreement. This agreement was then noticed for hearing before the Court and no objections were filed by any interested party. On November 10, 1988, an order approving the settlement with Comerica was entered.
 
 
 10
 On February 1, 1989, with Bohl as trustee and Allard & Fish as its attorneys, MTMS filed its Third Amended Disclosure and Third Amended Plan of Reorganization ("plan"). There was no explicit mention of potential causes of action relating to Bohl's relationship with Comerica or any alleged errors of omissions of Allard & Fish. At a hearing held on that date, the bankruptcy court ordered Bohl to disclose his connection to Comerica in the form of an affidavit, which he did on March 6, 1989.
 
 
 11
 Bohl also petitioned for fees on February 1, 1989. Objections were filed by attorney Lawrence Stockler on behalf of MTMS. At a hearing held on April 4, 1989, the question of Bohl's fees was taken under advisement.
 
 
 12
 On April 18, 1989, a hearing was held on confirmation of the plan and the voting was reported. The plan was confirmed by a confirmation order on May 4, 1989.
 
 
 13
 On June 23, 1989, the bankruptcy court issued a memorandum opinion and order which denied Bohl's fee applications in their entirety, vacated the orders appointing Bohl as trustee, and disqualified Bohl and his accounting firm from any further involvement as trustee or accountant. The court found a potential, if not actual conflict of interest, which gave rise to an appearance of impropriety, and which should have been disclosed in Bohl's original "Affidavit of Disinterested Person."
 
 
 14
 In late August 1989, MTMS and Kirkland, represented by Stockler, filed two causes of action against Bohl seeking damages resulting from Bohl's alleged breach of fiduciary duty as trustee and accountant in the alleged failure to disclose the Comerica relationship. In July 1990, a jury returned a verdict against Bohl based on damages arising from the Comerica settlement and the sale of the Devonshire property (a property disposed of in the plan). The jury verdict against Bohl was vacated by the bankruptcy court in its July 26, 1991 order because of newly discovered evidence, pursuant to Rule 60 of the Federal Rules of Civil Procedure.
 
 
 15
 After the filing of the MTMS claim against Bohl, but before the trial on the matter, MTMS filed a motion to modify the plan on October 16, 1989. The court entered its order modifying the plan on December 19, 1989.
 
 
 16
 In May 1990, Allard & Fish filed its second and final application for attorney fees. This application was objected to by Stockler, Kirkland, and MTMS. On August 14, 1990, after the jury verdict in the Bohl case, the court considered the Allard & Fish fee application. The court awarded Allard & Fish $25,000.00 out of a requested $66,381.19.
 
 
 17
 On November 14, 1990, Stockler filed a motion to reopen the case. The motion requested that the Unsecured Creditors Committee be allowed to pursue causes of action against Allard & Fish for alleged legal malpractice based on its representation of Bohl as the MTMS trustee. That motion was denied by the bankruptcy court.
 
 
 18
 On January 8, 1991, this action against Allard & Fish was filed by MTMS and Kirkland, in his individual capacity and on behalf of all other creditors. Stockler was counsel for MTMS and Kirkland. Among numerous other allegations, the complaint alleged legal malpractice by Allard & Fish based on alleged errors and omissions in its representation of Bohl. The action was removed to the district court. Pursuant to the Federal Rules of Civil Procedure, Allard & Fish moved to dismiss the case under Rule 12(b)(6) or for summary judgment under Rule 56. On September 30, 1991, the district court dismissed the lawsuit against Allard & Fish. The basis of the district court's ruling was that the May 4, 1989 order confirming the plan barred the present action under the doctrine of res judicata. From this order, the Plaintiffs appeal.
 
 II.
 
 19
 The Plaintiffs argue that their present action is not barred by the principles of res judicata. They argue that the alleged cause of action against Allard & Fish could not have been brought prior to the entry of the confirmation order because they were not aware of the extent or depth of Bohl's conflict of interest until the jury returned a verdict in the Bohl litigation and therein set forth a specific dollar amount of damages.
 
 
 20
 Allard & Fish contend that Plaintiffs' potential alleged cause of action against Allard & Fish was in place prior to the date of the entry of the confirmation order. Because the claims were not asserted, Allard & Fish contends that the claims are barred by the principle of res judicata.
 
 
 21
 A district court's dismissal of a case on res judicata grounds is reviewed de novo by this court. Sanders Confectionary Products, Inc. v. Heller Fin., Inc., 973 F.2d 474, 480 (6th Cir.) (citing Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 918 F.2d 658, 660 (6th Cir.1990)), petition for cert. filed, 61 U.S.L.W. 3403 (U.S. Nov. 16, 1992) (No. 92-853).
 
 
 22
 The doctrine of res judicata, also called claim preclusion, means a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action. Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). Res judicata has four elements: 1) a final decision was rendered on the merits in the first action by a court of competent jurisdiction; 2) the second action involved the same parties, or their privies, as the first; 3) the second action raises an issue actually litigated or which should have been litigated in the first action; and 4) there is an identity of the causes of action. Sanders Confectionery, 973 F.2d at 480.
 
 A.
 
 23
 In the bankruptcy context, an order confirming a plan of reorganization constitutes a judgment and a final adjudication on the merits of a bankruptcy proceeding. Id. (citing Stoll v. Gottlieb, 305 U.S. 165, 169-171 (1938); In re Chattanooga Wholesale Antiques, Inc., 930 F.2d 458, 463 (6th Cir.1991); 11 U.S.C. § 1141(a) (1988) (outlining preclusive effect of confirmed plan)). An order confirming a plan of reorganization bars litigation of the claims raised in the bankruptcy proceedings and also bars any claims that could have been raised in the bankruptcy proceedings or the confirmation proceedings not expressly reserved in the plan of reorganization or the order confirming the plan of reorganization. See id.; see also Sure-Snap Corp. v. State Street Bank & Trust Co., 948 F.2d 869, 872-73 (2d Cir.1991).
 
 
 24
 In this case, the bankruptcy judge entered the order confirming the plan after giving full notice and an opportunity to be heard to all interested parties. This order was approved by the Plaintiffs, and was not appealed. Furthermore, in a subsequent motion to modify the plan, the Plaintiffs again did not seek to preserve any claim against Allard & Fish. The plan and its later modification did not reserve any right of a claim against Allard & Fish even though the Plaintiffs knew that there was a cause of action against Allard & Fish before the plan was confirmed and before they requested a modification of the plan. Therefore, the order confirming the plan acts as a final judgment.
 
 B.
 
 25
 Courts have held in the context of bankruptcy matters that not only formally named parties, but all participants in the bankruptcy proceedings are barred by res judicata from asserting matters they could have raised in the bankruptcy proceedings. See Met-L-Wood Corp. v. Pipin, 861 F.2d 1012, 1016 (7th Cir.1988), cert. denied, 490 U.S. 1006 (1989).
 
 
 26
 In particular, the res judicata effect of the order confirming the plan bars claims by creditors that could have been brought within the context of the confirmation proceedings. Sanders Confectionery, 973 F.2d at 480-81; In re Justice Oakes II, Ltd., 898 F.2d 1544, 1551 (11th Cir.), cert. denied, 111 S.Ct. 387 (1990). In addition, a trustee is considered a party to a confirmation proceeding. Sanders Confectionery, 973 F.2d at 481.
 
 
 27
 In this case, MTMS, Kirkland, any creditors of MTMS, and Allard & Fish would all be considered participants in the bankruptcy proceedings. MTMS, as the Debtor, was a party to the bankruptcy proceeding. Kirkland, as owner of MTMS and as a creditor, was a party to the proceeding. Id. Similarly, any other "creditors" are parties to the proceeding. Id. Allard & Fish would also be party to the proceeding or, at least, privy to parties of the proceeding. Cf. id. (trustee is party to a proceeding); In re El San Juan Hotel Corp., 841 F.2d 6, 10 (1st Cir.1988) (Under doctrine of nonmutual claim preclusion, an attorney for a former trustee of Chapter 11 estate could use a prior action brought against the former trustee for willful beach of duties to estate as a defense to a later suit against that attorney even though attorney was not party to initial suit. Nonmutual claim preclusion deals with whether a party not involved in the earlier action may deflect a second lawsuit because he should have been, but was not, included in the earlier suit. What makes this nonmutual is that a plaintiff cannot rely on the earlier action as an estoppel against the attorney.); see also Met-L-Wood, 861 F.2d at 1018 (the trustees' fraud claim against a collection of defendants, including the debtor's law firm was barred by the confirmation order).
 
 C.
 
 28
 The third element of res judicata prohibits parties from bringing claims they have already brought or should have brought. The Plaintiffs argue that they could not have brought this action until the plan was confirmed and the estate had returned to MTMS because it is a claim against the trustee's lawyers. An action against a bankruptcy trustee's lawyers for the trustee's administration of the bankruptcy estate is a claim which should have been litigated before the plan was confirmed. See El San Juan Hotel, 841 F.2d at 10-11 (suit against trustee's attorney is barred by prior suit against trustee, especially since same or similar claims are in both); cf. Sanders Confectionery, 973 F.2d at 481 (suit against trustee based on the administration of bankruptcy estate would be barred by confirmation plan).
 
 
 29
 The Plaintiffs also argue that the alleged cause of action against Allard & Fish could not have been brought prior to the entry of the confirmation order because they were not aware of the extent or depth of Bohl's conflict of interest until the jury returned a verdict in the Bohl litigation and therein set forth a specific dollar amount of damages.
 
 
 30
 A cause of action for legal malpractice, which essentially is the gravamen of Plaintiffs' Complaint, arises when one is aware of possible malpractice. See Seebacher v. Fitzgerald, Hodgman, Cawthorne & King, P.C., 449 N.W.2d 673, 675-76 (Mich.App.1989). It is not necessary that a plaintiff be notified of the full extent of the damages in order for his cause to accrue. Id. Therefore, this contention is without merit.
 
 D.
 
 31
 As to the identity of causes of action, that determination is made by considering whether the claims arose out of the same transaction or series of transactions, or whether the claims arose out of the same core of operative facts. See Justice Oakes II, 898 F.2d at 1551-52.
 
 
 32
 In this case, the central issue of the bankruptcy proceedings was the determination and distribution of the MTMS estate and an attempt to reorganize MTMS. The essence of the complaint was that Allard & Fish did not take appropriate action with respect to an alleged conflict of interest and that a settlement was consummated in the Comerica claim which was more beneficial to Comerica than it would otherwise have been had the conflict not existed. The Plaintiffs' claims against Allard & Fish are based entirely on alleged acts and omissions that occurred within Allard & Fish's representation of Bohl in the bankruptcy proceedings. As a result, we find that the alleged claims against Allard & Fish are integrally related to the subject matter of the bankruptcy proceeding and arise out of the same transaction or series of transactions and the same core of operative facts as the bankruptcy proceedings.
 
 III.
 
 33
 Notwithstanding that the confirmed plan would bar this litigation, the Plaintiffs contend that they reserved the right to sue Allard & Fish in the confirmed plan. The Plaintiffs rely on the following language in the confirmed plan of reorganization: "all causes of action which the debtor may choose to institute shall be vested with the debtor." J.A. at 297 (No. 91-2261). While this language allows MTMS to institute suits, any suit that it institutes would be subject to defenses such as lack of jurisdiction, the statute of limitations, or in this case, the doctrine of res judicata. For example, while MTMS may bring a suit against Allard & Fish, that suit can be dismissed on res judicata grounds if that suit should have been brought in a prior action. As a result, the language that the Plaintiffs rely on is not helpful if their action is otherwise barred on res judicata grounds.
 
 
 34
 Along the same lines, the Plaintiffs argue that, pursuant to 11 U.S.C. § 1141(b) (1988), they could institute this cause of action against the Trustee's lawyers after the plan was confirmed. Section 1141(b) provides that: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." The Plaintiffs argue that a cause of action against a third party is a property or interest of the bankruptcy estate. They argue that upon confirmation of the plan on May 4, 1989, the cause of action against Allard & Fish accrued to MTMS.
 
 
 35
 This argument fails because it erroneously assumes that MTMS had preserved this lawsuit against Allard & Fish before the plan was confirmed. MTMS had not expressly reserved any such suit. Therefore, any cause of action that may have existed was extinguished upon the plan being confirmed and not appealed or modified to reserve a right to sue Allard & Fish. Therefore, this statute does not help the Plaintiffs in this case.
 
 
 36
 The Plaintiffs also argue that Allard & Fish should not be allowed to commit wrongful deeds in promulgating a plan for reorganization and then be shielded from those wrongful deeds by the confirmation of that plan. While this proposition might otherwise be appealing, the Plaintiffs knew about the wrongdoing prior to the confirmation of the plan in this case. Therefore, we find the Plaintiffs' public policy argument unpersuasive.
 
 IV.
 
 37
 We find that the Plaintiffs' claims are barred by the doctrine of res judicata. Therefore, the district court's judgment is AFFIRMED.
 
 
 
 [1]
 In 1991, Lawrence Stockler, as counsel for MTMS, filed an action (presently No. 91-2261) in bankruptcy court on behalf of MTMS and Kirkland, acting in his individual capacity and on behalf of all other creditors who would seek to participate in this action, against Allard & Fish. The case was referred to the district court where Allard & Fish moved to dismiss. Allard & Fish also filed a third-party complaint against Stockler, thus making him a party to the proceedings. Stockler then moved to withdraw as counsel for MTMS and Kirkland. Stockler did not specify at that time whether he was moving to withdraw as counsel for Kirkland in Kirkland's individual or representative capacity, however. The district court granted Stockler's motion to withdraw; however, it did not limit the withdrawal of Stockler to just MTMS and Kirkland in his individual capacity. After MTMS and Kirkland obtained substitute counsel who purported to represent MTMS and Kirkland, in his individual and representative capacities, the district court dismissed the case on the basis of res judicata
 MTMS and Kirkland have appealed the district court's decision. Stockler, believing that he withdrew from representing Kirkland in his individual capacity only, filed an appeal (presently No. 91-2260) on behalf of the other creditors. We find that when Stockler withdrew from the representation of Kirkland, he did not limit his withdrawal to just the representation of Kirkland in his individual capacity. In the absence of that limitation, Stockler's withdrawal from the representation of Kirkland included withdrawal from both Kirkland's individual and representative capacities. Therefore, we find that Stockler is no longer representing any Plaintiff or Appellant in the case. We have decided to consolidate Stockler's "appeal" in No. 91-2260 with No. 91-2261.