NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0441n.06

Case No. 14-3837

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TIM L. NEFF; BOBBIE K. NEFF, | ) | **FILED** |
| | ) | Jun 12, 2015 |
| Plaintiffs-Appellants, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| FLAGSTAR BANK, FSB, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: MOORE and COOK, Circuit Judges; COHN, District Judge.[*]

COOK, Circuit Judge. This is the second appeal stemming from Flagstar Bank, FSB's foreclosure of Tim and Bobbie Neff's home. *See Neff v. Flagstar Bank, FSB*, 520 F. App'x 323 (6th Cir. 2013). The Neffs allege that Flagstar induced them to forgo hiring counsel to defend against foreclosure by repeatedly promising them it would modify their loan. The district court granted summary judgment to Flagstar, and we AFFIRM.

In September 2009, the Neffs fell behind in their mortgage payments and requested a loan modification from Flagstar. Compounding these financial difficulties, Tim Neff injured his back at work the following month and began receiving workers' compensation benefits at a fraction of his regular salary.

---

[*]The Honorable Avern L. Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

During the next year and a half, Flagstar solicited financial documents from the Neffs in support of their modification application, which they supplied. The Neffs offer evidence that the bank led them to believe it would modify their loan to a payment structure they could afford. Flagstar counters that it never guaranteed the Neffs a modification. Tim Neff acknowledged in his deposition that a representative told him "that one of the issues that [the bank] was having with modification . . . [was] that [he was] receiving temporary total as opposed to a permanent disability payment." The Neffs owed over $150,000 on the loan, and Flagstar offered them a temporary forbearance on the condition they make four reduced payments and supply all requested documentation.

In December 2010, the Neffs failed to send a tax document required under the forbearance agreement, and the bank told them it would not modify their loan based on the information they supplied. The Neffs executed the forms and sent them to Flagstar. Soon after, Flagstar's attorney sent a letter warning the Neffs that they were in default and the bank intended to commence foreclosure proceedings. Tim Neff asserts that he phoned the bank in response to the letter and that an employee assured him he would not need legal counsel for the impending foreclosure action because Flagstar could "do everything an attorney could do" at no cost and that foreclosure was "a formality."

In January 2011, Flagstar filed a foreclosure action in the Knox County Court of Common Pleas, and the Neffs—allegedly relying on Flagstar's assurances—declined to hire an attorney or answer the complaint. In June, the state court granted Flagstar's motion for a default judgment and scheduled the sheriff's sale for early December. The Neffs state that, despite the letter rejecting their application for a modification, the bank continued to assure them it was still working diligently on a modification throughout this period.

A few weeks before the sale date, Flagstar sent a letter denying the Neffs' updated application, citing another failure to provide the necessary documentation. At roughly the same time, the Neffs learned of the sheriff's sale and sought legal counsel. Through their attorney, the Neffs moved for relief from the default judgment. But the sale proceeded as scheduled, and the state court issued a one-sentence order overruling the Neffs' motion several months later.

After the sale but before the denial of their Rule 60(B) motion, the Neffs sued Flagstar in federal district court, alleging violations of the Fair Debt Collection Practices Act, fraudulent misrepresentation, and promissory estoppel.[1] The court dismissed the FDCPA claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, but permitted discovery on the state-law claims. The Neffs do not challenge the dismissal of their FDCPA claim.

Following discovery, Flagstar moved for summary judgment on the fraud and promissory estoppel claims, which the court granted. The court found the Neffs' claims precluded by the state-court default judgment and the Neffs' failure to appeal the denial of their Rule 60(B) motion. The Neffs timely appeal.

We review the district court's grant of summary judgment de novo. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990). We construe all reasonable inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and uphold the grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

---

[1]Although the complaint includes a claim for "Breach of Contract and Promissory Estoppel," the district court construed this as a claim only for promissory estoppel because it found the Neffs neither alleged facts supporting a breach of contract nor advanced that claim in any briefing. The Neffs do not challenge this ruling on appeal.

Although the district court judged the Neffs' claims precluded, Flagstar presses us to affirm because the Neffs offer no evidence that they suffered any harm as a result of the bank's conduct. *See Olympic Holding Co. v. ACE Ltd.*, 909 N.E.2d 93, 101 (Ohio 2009) ("[T]he party claiming the [promissory] estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse." (citation omitted)); *Roark v. Rydell*, 881 N.E.2d 333, 343 (Ohio Ct. App. 2007) (listing causation and harm as elements of fraud). We agree and affirm on this alternative ground. *See Airline Prof'ls Ass'n of Int'l Bhd. of Teamsters v. Airborne, Inc.*, 332 F.3d 983, 986 n.3 (6th Cir. 2003) ("It is well-established that a prevailing party may assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court." (citation and internal quotation marks omitted)).

The Neffs allege that Flagstar misrepresented its willingness to modify the loan as well as the Neffs' need for an attorney in the foreclosure action. They reason that, absent these misrepresentations, they would have prevented the sale of their home by defending the foreclosure action or paying the outstanding balance on their loan. First, this argument presumes that the Neffs could have successfully defended the foreclosure action with the assistance of counsel, a presumption their own evidence undermines. When asked how an attorney would have improved their lot, Tim Neff cited the many solicitations he received from attorneys promising to save his home and speculated that one of these "could have worked with Flagstar and got a remodification of the loan." But the Neffs identify no legal defense or other leverage to bargain with; they entered default before requesting a modification, they had no way to make their payments without a modification, and they recognized that Flagstar's best offer might still prove unaffordable. *See Telxon Corp. v. Smart Media of Del., Inc.*, Nos. 22098, 22099, 2005

WL 2292800, at \*36 (Ohio Ct. App. Sept. 21, 2005) ("[C]onsequential damages are severely limited by concepts such as proximate cause, foreseeability, mitigation, remoteness and speculation.").

Alternatively, the Neffs suggest that they "could have used their tax refunds to cure the default" or "applied for state or federal funds to reinstate or modify their loan." But the evidence they point to shows that their tax refunds were too insubstantial to cure the default. And they offer no evidence of their ability to obtain state or federal funding. If the Neffs could not assert a colorable defense in the state court or otherwise stave off foreclosure, then Flagstar's statements were not the proximate cause of their alleged injury. *See Roark v. Rydell*, 881 N.E.2d at 343.

The same rationale applies to the promissory estoppel claim. The Neffs argue that they detrimentally relied on Flagstar's promise to provide a modification or a second temporary forbearance plan. But as the facts above show, the Neffs had no alternative to a modification or forbearance and therefore did not "change [their] position for the worse" due to Flagstar's promise. *Olympic*, 909 N.E.2d at 101. Thus, the Neffs failed to demonstrate that there exists a genuine dispute of fact as to whether they suffered any harm as a result of Flagstar's conduct. *See* Fed. R. Civ. P. 56(c)(1).

We AFFIRM the judgment.