951 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL ACCEPTANCE COMPANY OF AMERICA, Plaintiff-Appellee,
v.
Joseph S. BATHALTER, Defendant-Appellant.
 No. 91-3128.
 United States Court of Appeals, Sixth Circuit.
 Dec. 9, 1991.
 
 Before ALAN E. NORRIS and SILER, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 In 1979, plaintiff, National Acceptance Company of America (NACA), brought suit in an Illinois district court against the defendant, Joseph S. Bathalter, for fraud, breach of fiduciary duty, unjust enrichment and breach of company policy[1] with respect to defendant's actions as a former NACA employee. Defendant answered the complaint by asserting his Fifth Amendment privilege against self incrimination without addressing the merits of NACA's claims. The Illinois district court granted the plaintiff's motion for judgment on the pleadings holding that the defendant's failure to answer discovery requests constituted an admission of the averments of the complaint.
 
 
 2
 Bathalter appealed the judgment[2] against him to the United States Court of Appeals for the Seventh Circuit, which reversed the Illinois district court's decision because the judgment was too severe a penalty given the defendant's assertion of a constitutional privilege. National Acceptance Co. of America v. Bathalter, 705 F.2d 924 (7th Cir.1983). Absent proof and a motion for summary judgment, or a complete trial, the Seventh Circuit held that a judgment could not properly be entered against the defendant simply because he had invoked his Fifth Amendment privilege. Id. at 932.
 
 
 3
 On remand, the plaintiff presented volumes of evidence to support its motion for summary judgment. Bathalter continued to rely on his Fifth Amendment claim and presented no evidence in response. Based on the record before it, the Illinois district court granted the plaintiff's summary judgment motion and entered judgment in the same amount as before.
 
 
 4
 On February 9, 1987, the defendant filed for voluntary bankruptcy under chapter 7, and NACA filed an adversary proceeding to prevent Bathalter's discharge of its judgment under 11 U.S.C. § 523. Both parties moved for summary judgment in the bankruptcy proceeding. While denying the defendant's motion, the bankruptcy court granted the plaintiff's motion on the theory that the earlier Illinois district court decision precluded relitigation of the issues. The bankruptcy court held that NACA's judgment was nondischargeable under 11 U.S.C. § 523 because the prior decision conclusively established the defendant's fraudulent conduct.
 
 
 5
 The defendant then appealed this adverse ruling to the district court for the Southern District of Ohio which affirmed the bankruptcy court's determination that the Illinois district court, some six years earlier, had actually and necessarily litigated the fraud issue and that Bathalter was collaterally estopped from relitigating the prior judgment. We must now decide whether the bankruptcy court erred in granting the plaintiff's motion for summary judgment.
 
 
 6
 In Spilman v. Harley, 656 F.2d 224 (6th Cir.1981), we set out the three essential elements of issue preclusion or collateral estoppel. The party seeking preclusion must show that the precise issue was: (1) raised in the prior proceeding; (2) actually litigated; and (3) necessary to the outcome of the case. Id. at 228. We make our analysis, then, under the Spilman mandate.
 
 
 7
 Defendant argues that NACA has failed to establish the last two elements of issue preclusion. He argues that the bankruptcy court erred because it had to "read between the lines" to determine what was actually and necessarily litigated in the Illinois district court. Also, Bathalter maintains that the Illinois court did not employ a clear and convincing standard of proof to resolve the fraud issue as required by 11 U.S.C. § 523. Finally, defendant asserts that the Ohio district court improperly determined that the cause of action for fraud was necessarily litigated because there were other causes of action which might have supported the Illinois district court's finding of liability.
 
 
 8
 The Illinois district court opinion does not explain in great detail the rationale for granting summary judgment to NACA:
 
 
 9
 The court has reviewed the extensive evidence submitted by NACA in support of that motion. That evidence includes thousands of documents, deposition excerpts, and affidavits. The court finds that that evidence supports NACA's claims. Thus, since Bathalter has submitted no evidence in opposition to the motion which would raise any factual issues, NACA's motion for summary judgment on the issue of liability is granted.
 
 
 10
 The bankruptcy court, however, held that the Illinois district court's failure to provide more detail did not foreclose issue preclusion under the circumstances.
 
 
 11
 In deciding what was actually and necessarily litigated in a prior decision, we look not only to the judgment itself, but also to the record as a whole. See Spilman, 656 F.2d at 228. In the present instance, both the bankruptcy court and the district court properly examined the entirety of the proceedings, including the original Illinois district court complaint which essentially alleged fraud and unjust enrichment.
 
 
 12
 The Illinois district court had contended with the underlying litigation for many years and the case had already been appealed and remanded once. It knew the nature and circumstances of the original complaint and the basis of all the causes of action asserted against Bathalter who made no response on the merits. The principal issue was whether summary judgment was appropriate when the opposing party continued to invoke the Fifth Amendment. The court's cursory treatment of the details of the controversy is understandable, and its succinct disposition is no barrier to a conclusion that NACA's claims were actually and necessarily litigated.
 
 
 13
 In granting summary judgment, the Illinois district court, in our judgment, implicitly found that there were no genuine issues of material fact to be determined with regard to the complaint, including the underlying fraud allegations. We conclude that the Illinois district court essentially found that the plaintiff had proved all the elements of fraud by the requisite burden, and the defendant had failed to present any rebuttal evidence. The fact that the bankruptcy court later explored more details of the alleged scheme, not specifically included in the Illinois opinion, does not negate the propriety of collateral estoppel. In our view, the bankruptcy court merely stated explicitly what the Illinois court decided implicitly.
 
 
 14
 Generally, disposition of a case on summary judgment grounds meets the actually litigated requirement of the issue preclusion test. Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp., 421 F.2d 1313, 1319 (5th Cir.1970), cert. denied, 400 U.S. 991 (1971) ("It would be strange indeed if a summary judgment could not have collateral estoppel effect. This would reduce the utility of this modern device to zero. It would compel the useless ritual of a formal trial to get the equivalent ruling at the end of the evidence--plaintiff's, defendant's, or all--of a directed verdict. Indeed, a more positive adjudication is hard to imagine." (footnote omitted)). The defendant cites no authority to support his contention that the grant of summary judgment is not an actual litigation. Instead, Bathalter cites inapposite cases holding that default judgments, consent judgments, and confessions of judgment do not satisfy the actually litigated requirement. When ruling on a summary judgment motion, unlike motions for these other forms of summary disposition, a judge must look to the merits of the case to determine whether there is a genuine issue of material fact to be resolved. See 18 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: Jurisdiction §§ 4442-4444 (1981).
 
 
 15
 We note that the defendant, through counsel, vigorously defended the suit throughout. He had an opportunity to address the merits without waiving his Fifth Amendment right. He made a voluntary tactical decision, the consequence of which he must now face:
 
 
 16
 the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment "does not preclude the inference when the privilege is claimed by a party to a civil cause." [Baxter v. Palmigiano,] 425 U.S. at 318, 96 S.Ct. at 1558.
 
 
 17
 .............................................................
 
 
 18
 ...................
 
 
 19
 * * *
 
 
 20
 After Baxter there is no longer any doubt that at trial a civil defendant's silence may be used against him, even if that silence is an exercise of his constitutional privilege against self-incrimination. Thus, if this case were to go to trial, NAC[A] would be entitled to the benefit of an adverse inference against Bathalter if he declined to answer a question and invoked his Fifth Amendment privilege....
 
 
 21
 Bathalter, 705 F.2d at 929-30. The defendant and his counsel, were aware that a summary judgment motion, supported by proof, would be an appropriate mechanism for disposing of the case on the merits if the defendant continued to stand silent. See Bathalter, 705 F.2d at 932. In light of these facts, we will not now allow the defendant to relitigate the issues about which he refused to speak on two previous occasions. See 18 Wright, Miller & Cooper at § 4416 (stating that the purpose of issue preclusion is to force parties to present their best arguments the first time they are given an opportunity to do so).
 
 
 22
 The defendant claims that the Illinois district court's decision does not meet the issue preclusion test because it is not clear what standard was used to determine the fraud issue. We are satisfied that the Illinois district court used the clear and convincing standard which Illinois requires for proof of fraud. See Merit Ins. Co. v. Colao, 603 F.2d 654 (7th Cir.1979), cert. denied, 445 U.S. 929 (1980). Even if we had doubt about this standard, the defendant's argument is mooted by Grogan v. Garner, --- U.S. ----, 111 S.Ct. 654 (1991). The Supreme Court held in Grogan that the preponderance of the evidence standard applies to the fraud determinations under 11 U.S.C. § 523. See also In re Tsamasfyros, 940 F.2d 605, 607 (10th Cir.1991). The defendant's contention that the Illinois district court used a standard that was too lenient must fail.
 
 
 23
 The defendant next argues that the Illinois decision does not meet the "necessarily litigated" prong of the issue preclusion test because at least part of the plaintiff's initial complaint alleged causes of action based on violations of company policy and breach of fiduciary duty. The defendant speculates that the earlier judgment might have been based entirely, or in part, on these other causes of action. Absent a specified basis for the judgment, the defendant maintains that he should be given an opportunity to relitigate the fraud issue and the amount of damages necessarily tied to the fraud allegations.
 
 
 24
 Our examination of the original complaint reveals that the dominant thrust of all its allegations, regardless of how they were phrased, is that the defendant defrauded the plaintiff. Since the bedrock of all the averments against Bathalter is fraud, we will not permit further proceedings to challenge the underlying basis of the prior judgment.
 
 
 25
 The plaintiff's memorandum in support of summary judgment makes clear that the plaintiff believed that all the allegations in the complaint, whether phrased in terms of breach of fiduciary duty or violation of company policy or something else, constituted fraud. The lower court opinions treat the plaintiffs acts as constituting fraud. These issues were "necessarily litigated."
 
 
 26
 Finally, that the Illinois district court did not specifically denominate the basis for its summary judgment determination of liability does not prevent the application of issue preclusion. See Matter of Pahule, 849 F.2d 1056, 1058 (7th Cir.1988). Using the Pahule rationale, one may conclude that even though the Illinois district court did not state explicitly that it found liability on the fraud issue, the court must have done so because the complaint, in its most elementary form, alleged a massive scheme to defraud the plaintiff. To reach the conclusion urged by defendant would place form over substance. We, therefore, AFFIRM the decision of the district court.
 
 
 
 [1]
 In his answer to NACA's original complaint, Bathalter did not mention allegations of his violation of company policy, but stated: "In three counts, the complaint charges defendant with fraud, breach of fiduciary duty, and unjust enrichment in connection with certain loans with which defendant had an alleged connection while he was allegedly an employee and officer of plaintiff."
 
 
 [2]
 The judgment exceeded $8,000,000