97 F.3d 155
 153 L.R.R.M. (BNA) 2402, 132 Lab.Cas. P 11,689
 AIRCRAFT BRAKING SYSTEMS CORPORATION, Plaintiff-Appellant,
v.
LOCAL 856, INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE
AND AGRICULTURAL IMPLEMENT WORKERS, UAW, Defendant-Appellee,
American Arbitration Association, Inc., Defendant.
 No. 95-3774.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 14, 1996.
Decided Oct. 2, 1996.
 
 Edward C. Kaminski (briefed), Buckingham, Doolittle & Burroughs, Akron, OH, Carol MacKenzie, Pearl & MacKenzie (argued and briefed), Syosset, NY, for Plaintiff-Appellant.
 David Roloff, Goldstein & Roloff (argued and briefed), Cleveland, OH, for Defendant-Appellee.
 Before: MARTIN, Chief Judge; DAUGHTREY, Circuit Judge; BECKWITH, District Judge.*
 BOYCE F. MARTIN, Jr., Chief Judge.
 
 
 1
 Plaintiff Aircraft Braking Systems appeals the district court's order vacating an arbitration ruling that no interim collective bargaining agreement existed between Aircraft Braking Systems and Local 856, UAW. Aircraft Braking Systems also appeals the district court's decision to remand the underlying grievance to a new arbitrator, and the district court's award of attorney's fees in favor of the union. We AFFIRM the district court's judgment and REMAND for further proceedings consistent with this opinion.
 
 
 2
 The facts of the underlying dispute giving rise to this appeal are stated succinctly in a prior unpublished decision of this Court:
 
 
 3
 This case involves a labor dispute between [Aircraft Braking Systems Corporation] and Defendant Union. The Union is the certified bargaining representative for ABS' production and maintenance employees. ABS and the Union were parties to a collective bargaining agreement which, by its own terms, expired on August 10, 1991. Prior to the August 10, 1991 expiration of the collective bargaining agreement, [the parties] entered into negotiations for a new agreement; however, they were unable to reach an agreement on the terms of a new collective bargaining agreement.
 
 
 4
 On August 10, 1991, ABS informed the Union that it was implementing the terms of its "Final Proposal" to the Union, on the grounds that the parties had reached an impasse in their bargaining. The "Final Proposal" stated in relevant part:
 
 
 5
 The Contract between U.A.W., Local # 856 and Aircraft Braking Systems Corporation which by its terms expires at 6:00 PM August 10, 1991, is hereby extended and renewed for a period of three years from August 10, 1991, or the date of ratification whichever is later except as specifically amended hereafter.
 
 
 6
 ....
 
 
 7
 14. All Company proposals dated June 20, 1991, and all tentative agreements will be incorporated into the Basic Labor Agreement ... except as modified by the attached Company proposals.
 
 
 8
 ....
 
 
 9
 The existing collective bargaining agreement between the parties, which expired on August 10, 1991, contained both an arbitration clause and a no-strike clause. One of the proposals made by ABS on June 20, 1991 was to change paragraph 193 of the existing collective bargaining agreement to read:
 
 
 10
 The parties to this agreement will utilize the services of the American Arbitration Association when the need for arbitration arises.
 
 
 11
 ....
 
 
 12
 This resulted in a unilaterally imposed "Final Proposal" which reads in relevant part:
 
 Section 2. Grievance Procedure
 Step 4
 
 13
 It is hereby agreed that should the above procedure fail to bring about an agreement between the parties with respect to certain grievances, either party may within twenty (20) workings [sic] days after the final written answer as outlined in the agreement above submit the issue to an arbitrator, selected by mutual agreement.
 
 
 14
 ....
 
 
 15
 181 The parties to this agreement will utilize the services of the American Arbitration Association when the need for arbitration arises.
 
 
 16
 ....
 
 
 17
 184 Specifically the Arbitrator shall not have the power to arbitrate general wage levels or maximum or minimum rates of existing classifications, and the only grievances which may be submitted to the said Arbitrator for hearing and determination shall be those arising out of alleged violation or misinterpretation of the provisions of this agreement; or individual rate grievances within the employee's classification (classification in this instance shall include the subdivision).
 
 
 18
 ....
 
 Article V. WORK STOPPAGE
 Section 1. No Strike or Lockout
 
 19
 203 It is the express desire of the parties to this Agreement that the procedures contained herein will serve the purpose of affecting a peaceable settlement of all disputes that may arise between them. As long as this Agreement is in effect, the Company will not lock out any employees. As long as this Agreement is in effect, the Union will not cause or permit its members to cause, nor will any employee take part in any strike, sit-down, stay-in or slow-down, or any curtailment of work or restriction of production, or picketing, or interference with production of the Company in any matter which comes within the jurisdiction of the Arbitrator.
 
 
 20
 Aircraft Braking Sys. Corp. v. Local 856, International Union, United Auto, Aerospace and Agricultural Implement Workers, 1995 WL 236678 at * 1-2 (6th Cir.1995) (unpublished) (Aircraft Braking Systems I). In Aircraft Braking Systems I, Aircraft Braking Systems sought a stay of arbitration proceedings brought by the Union on the ground that, because the Union never ratified the "Final Proposal" set forth in part above, no collective bargaining agreement existed between the parties. According to Aircraft Braking Systems' theory, because no agreement existed, there was nothing upon which the arbitrator could base his or her decision, and therefore the grievance at issue was not arbitrable. The district court rejected this argument, finding that, based on the parties' respective conduct after the expiration of the prior collective bargaining agreement on August 10, 1991, an interim agreement existed between the parties, which included an agreement to arbitrate certain disputes.[1] After finding that an interim contract existed, the district court refused to issue an injunction to stay the arbitration proceedings that Aircraft Braking Systems sought to avoid. This Court affirmed on appeal, holding that the district court did not commit clear error in finding that a temporary contract existed, which included an agreement to arbitrate certain disputes between the parties. We also rejected Aircraft Braking Systems' claim that the district court erred by failing to give Aircraft Braking Systems adequate notice before consolidating the hearing on its motion for a preliminary injunction with the merits of the action. We held that the district court adequately afforded the parties a full and fair opportunity to litigate the matter, stating that:
 
 
 21
 [I]n this case, [Aircraft Braking Systems] filed a post-hearing brief which indicated its satisfaction with the state of the record. Further, in its brief on appeal, [Aircraft Braking Systems] has reargued the same issue in the same way and relied on the same evidence. More importantly, in its brief on appeal, [Aircraft Braking Systems] did not indicate what additional evidence it would have presented if it had received notice from the district court. Accordingly, we conclude that [Aircraft Braking Systems] was not prejudiced by the district court's failure to give notice under Fed.R.Civ.P. 65.
 
 
 22
 Id. at * 10 (footnote omitted).
 
 
 23
 The present case arose on March 8, 1994, when Aircraft Braking Systems, making arguments similar to those it made in Aircraft Braking Systems I, sought to stay arbitration of two grievances, No. A-8779 and No. A-8712, initiated by the Union by filing a complaint seeking a temporary restraining order and preliminary injunction in district court. At the time, Judge Bell had already issued his opinion and order in Aircraft Braking Systems I, and the appeal was pending in this Court. On April 1, the district court held a hearing on the motion for a preliminary injunction. On April 4, the court issued an order temporarily enjoining the arbitration of Grievance A-8779 for reasons not at issue here. However, the court refused to stay arbitration of Grievance A-8712.
 
 
 24
 The parties proceeded to arbitration on Grievance A-8712 on April 28. The arbitration hearing was held on four separate days, concluding on September 20, 1994. The arbitrator issued a decision on March 1, 1995, stating his view that Grievance A-8712 was not arbitrable because there was no enforceable agreement to arbitrate. In the arbitrator's view, the district court's order in Aircraft Braking Systems I was "not binding upon this [a]rbitrator:"
 
 
 25
 For were I to comply with the Court's order, I would have to ignore the evidentiary record in this case. In other words, I would be abdicating my role as an [a]rbitrator in determining the intent upon the evidentiary record.
 
 
 26
 ....
 
 
 27
 The evidentiary record warrants the conclusion that neither the Company nor the Union intended to be contractually bound after 6:00 p.m. on August 10, 1991. The fundamental principles of contract law apply in this case. The Company's final offer was not accepted expressly or impliedly by the Union.
 
 
 28
 The Company's position that there is no agreement to arbitrate the instant dispute is sustained. The Union failed to carry its burden of proving that such an agreement existed between the parties.
 
 
 29
 The parties thereafter filed respective motions to confirm and vacate the arbitrator's award. On May 4, 1995, the district court ordered the parties to brief the issue whether the doctrines of res judicata or collateral estoppel barred the arbitrator from concluding that no agreement existed in light of the district court's order in Aircraft Braking Systems I. On June 16, the district court issued an order vacating the arbitrator's award on the ground that the parties did not submit the issue of arbitrability to the arbitrator, and that Aircraft Braking Systems was barred by collateral estoppel and res judicata principles from relitigating the issue whether the parties had an interim agreement requiring arbitration. In addition, the district court remanded the grievance to a new arbitrator, stating that the previous arbitrator "has indicated his feelings on the issue." Finally, the district court awarded attorney fees in favor of the Union, finding that "[t]his position of [Aircraft Braking Systems'] that there is no agreement is unjustified, and its continued litigation against the existence of such an agreement is in bad faith." Aircraft Braking Systems filed this timely appeal.
 
 
 30
 Because the district court concluded that Aircraft Braking Systems was collaterally estopped from litigating the issue whether an interim agreement existed between the parties, we conduct a de novo review of the district court's decision to vacate the arbitrator's award. See John Morrell & Co. v. Local Union 304A of the United Food and Commercial Workers, AFL-CIO, 913 F.2d 544, 559 (8th Cir.1990); cf. Black v. Ryder/P.I.E. Nationwide, 15 F.3d 573, 582 (6th Cir.1994). As a preliminary issue, we first address whether an arbitrator is bound by res judicata or collateral estoppel when deciding a matter previously litigated in federal court between the same parties. The district court answered this question affirmatively. This Court has not addressed this precise issue, but those other circuits confronting the problem have held uniformly that arbitrators are bound by prior federal court decisions under the doctrines of collateral estoppel and/or res judicata. See John Morrell & Co., 913 F.2d at 562-63 (vacating arbitration award involving an interpretation of a no-strike clause in the parties' agreement contrary to a previous jury determination of the same issue in litigation between the same parties on the ground that consideration of the issue was barred by collateral estoppel principles); Miller Brewing Co. v. Fort Worth Distrib. Co., 781 F.2d 494, 499 (5th Cir.1986) (reasoning that parties should be barred from seeking relief from an arbitration panel if res judicata principles would bar relief in federal court because an arbitration award involves the entry of judgment by a court); Telephone Workers Union of New Jersey, Local 827, International Brotherhood of Electrical Workers v. New Jersey Bell Tel. Co., 584 F.2d 31, 33 (3d Cir.1978) (refusing to confirm an arbitration award on res judicata and collateral estoppel grounds where arbitrator's determination on the arbitrability of an issue was contrary to a previous judicial decision on the same issue). We agree with the reasoning of these cases. Arbitrators are not free to ignore the preclusive effect of prior judgments under the doctrines of res judicata and collateral estoppel, although they generally are entitled to determine in the first instance whether to give the prior judicial determination preclusive effect. See Trailways Lines, Inc. v. Trailways, Inc. Joint Council, 807 F.2d 1416, 1425 (8th Cir.1986). However, Aircraft Braking Systems does not argue here that arbitrators are free to ignore prior judicial decisions if the doctrines of collateral estoppel or res judicata apply. Rather, Aircraft Braking Systems claims that the parties submitted the question of arbitrability of the grievance to the arbitrator, or alternatively, that collateral estoppel is not applicable on the facts of this case.
 
 
 31
 Relying on the Supreme Court's decision in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), Aircraft Braking Systems claims that the parties submitted the issue of the arbitrability of their dispute to the arbitrator. In First Options, the Supreme Court explained that "[c]ourts should not assume that parties have agreed to arbitrate arbitrability without 'clear and unmistakable' evidence that they have done so," id. at ----, 115 S.Ct. at 1924 (1995) (citations omitted), also stating that "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound by the arbitrator's decision on that point," id. at ----, 115 S.Ct. at 1925. In First Options, the defendant Kaplan claimed that he was not a party to the contract at issue, and therefore was not required to submit to arbitration of a dispute arising out of the contract. At issue before the Supreme Court was whether a federal court or the arbitrator should determine if a valid agreement to arbitrate existed between the parties. After explaining that courts should apply ordinary contract principles to determine whether the parties intended to submit the arbitrability issue to the arbitrator, it cautioned that courts normally should decide whether a valid agreement to arbitrate exists between the parties absent "clear and unmistakable" evidence that the parties submitted the issue to the arbitrator. Id. at ----, 115 S.Ct. at 1924. Because the defendant Kaplan had vehemently protested the arbitrator's authority to decide the dispute in First Options, it was held that Kaplan did not clearly and unmistakably submit the arbitrability issue to the arbitrator. Id.
 
 
 32
 Here, Aircraft Braking Systems protested against the arbitrator's authority to hear the dispute on the ground that there was no agreement on which the arbitrator could base its decision. Aircraft Braking Systems stated at the outset of the proceedings that:
 
 
 33
 [W]e want to be on record that we are protesting. We have no choice but to be here so as to avoid contempt of court, but there is going--there can't be a dispute of a violation of an agreement that doesn't exist.
 
 
 34
 The Union's representative also indicated his belief that "Judge Bell [has] ruled that we do have an interim contract."
 
 
 35
 Aircraft Braking Systems now argues that, although it did not embrace the idea of proceeding to arbitration, it did agree to proceed and submit the issue of arbitrability to the arbitrator. While this argument is meritless, the statement is true. It has been Aircraft Braking Systems' position all along that no interim agreement containing an arbitration clause exists, period. Indeed, that is precisely why it sought to enjoin the arbitration proceedings in this case, and why it sought to enjoin arbitration in Aircraft Braking Systems I. It did not succeed in Aircraft Braking Systems I, and did not succeed in the present case, but was instead forced to go to arbitration. It had absolutely nothing to lose by arguing the interim agreement issue in arbitration; perhaps it could receive a favorable ruling there, contrary to the prior court rulings on the issue. That is precisely what Aircraft Braking Systems received. No doubt, had the arbitrator's ruling been otherwise, Aircraft Braking Systems would be before this Court seeking to have the award vacated on the ground that the parties did not submit the issue of arbitrability to the arbitrator, and instead sought to have that issue decided in district court.
 
 
 36
 In any event, we do not believe the parties submitted the arbitrability issue to the arbitrator in this case. The "arbitrability" dispute at issue here is not a dispute concerning the scope of an arbitration clause in an otherwise valid agreement, but rather is a dispute as to whether a valid agreement to arbitrate exists at all. This question traditionally has been answered by the courts. See National Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 135 (2d Cir.1996); Three Valleys Municipal Water District v. E.F. Hutton & Co., 925 F.2d 1136, 1140-41 (9th Cir.1991). This question was also the disputed issue in First Options, and the Supreme Court held that courts should not assume that the parties have agreed to arbitrate the question whether there is a valid agreement to arbitrate without "clear and unmistakable" evidence that the parties so intended. First Options, 514 U.S. at ----, 115 S.Ct. at 1924 (citation omitted).
 
 
 37
 Here, the parties clearly and unmistakably submitted the arbitrability issue to the district court in Aircraft Braking Systems I. The district court held that the parties had an interim collective bargaining agreement, and refused to enjoin arbitration proceedings under that agreement. The court's holding that an agreement exists was affirmed by this Court. Aircraft Braking Systems' claim in the present arbitration proceeding that the parties did not have an interim agreement was contrary to the district court's holding in Aircraft Braking Systems I, and the arbitrator's decision to decide that issue was in excess of his authority and in disregard of the law. See John Morrell & Co., 913 F.2d at 563. Indeed, the arbitrator simply stated that he did not believe that he was "bound" by the district court's holding, and did not even discuss whether res judicata or collateral estoppel was applicable to the facts before him.
 
 
 38
 The only real difference between this case and First Options is that the party strongly protesting the arbitrator's authority to decide the dispute (Aircraft Braking Systems) won in arbitration. In First Options, because Kaplan lost at arbitration on his argument that there was no agreement to arbitrate, he maintained consistently on appeal that he did not submit the issue of arbitration to the arbitrator. Here, Aircraft Braking Systems had the good fortune to win its argument that no agreement existed, and is now claiming that it happily submitted the issue of arbitrability to the arbitrator. Aircraft Braking Systems cannot have it both ways. Taking a passage from the Supreme Court in First Options, we note that, "[I]nsofar as [Aircraft Braking Systems was] forcefully objecting to the arbitrator deciding [its] dispute ... one naturally would think that [it] did not want the arbitrator to have binding authority over [it]." First Options, 514 U.S. at ----, 115 S.Ct. at 1925. Accordingly, we hold that the parties did not submit the issue of arbitrability to the arbitrator.
 
 
 39
 We also believe that the arbitrator was collaterally estopped from deciding whether an interim agreement existed between the parties.[2] Collateral estoppel provides that "a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies." Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Put another way, the doctrine dictates that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). This Court has established a four-part test for determining whether and when collateral estoppel bars relitigation of an issue:
 
 
 40
 1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
 
 
 41
 2) determination of the issue must have been necessary to the outcome of the prior proceeding;
 
 
 42
 3) the prior proceeding must have resulted in a final judgment on the merits; and
 
 
 43
 4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.
 
 
 44
 N.A.A.C.P. v. Detroit Police Officers Ass'n, 821 F.2d 328, 330 (6th Cir.1987). Aircraft Braking Systems' primary argument against the application of collateral estoppel is that there have been material changes in fact which render the application of collateral estoppel inappropriate. See Montana, 440 U.S. at 159, 99 S.Ct. at 976. Specifically, Aircraft Braking Systems bemoans the fact that the hearing before Judge Bell in Aircraft Braking Systems I lasted little more than two hours, whereas the instant arbitration hearing lasted four days, during which Aircraft Braking Systems presented much more evidence on the issue whether an interim agreement existed. However, this claim is not a claim that material facts changed between the time of Judge Bell's decision and the present arbitration proceeding. Rather, as the district court noted, this is a claim that Judge Bell's decision was based on an incomplete record. There are at least two responses to this argument. First, this Court has already held that Aircraft Braking Systems had a full and fair opportunity to litigate this issue. See Aircraft Braking Systems I, 1995 WL 236678 at * 9-10. Second, assuming that the presentation of the facts to Judge Bell was deficient, "a fact, question or right distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view." Montana, 440 U.S. at 162, 99 S.Ct. at 978 (quoting United States v. Moser, 266 U.S. 236, 242, 45 S.Ct. 66, 67, 69 L.Ed. 262 (1924)). Accordingly, this argument must fail.
 
 
 45
 Aircraft Braking also claims that the application of collateral estoppel here would be a manifest injustice, see Shimman v. Frank, 625 F.2d 80, 88-90 (6th Cir.1980), because Judge Dowd failed to decide the collateral estoppel issue at the hearing on Aircraft Braking Systems' preliminary injunction motion, in effect requiring the arbitrator to decide the arbitrability issue. However, no manifest injustice has occurred here. Perhaps the most persuasive reason is that arbitrability would not have been the "threshold issue" that Aircraft Braking Systems claims it was but for its continued refusal to recognize the effect of Judge Bell's ruling that an interim agreement existed between the parties. Instead, Aircraft Braking Systems' representative at the arbitration proceeding argued that he "fully expected" Judge Bell's ruling to be overturned, and that Judge Bell had not determined that an interim contract existed. Thus, Aircraft Braking Systems was able to maintain its claim that the arbitrator had no authority to hear the instant grievance because no agreement existed between the parties. This bald-faced disregard of the district court's decision in Aircraft Braking Systems I is unfounded. It is even more incredible that Aircraft Braking Systems still maintains its position in the face of this Court's holding that the parties do have an interim agreement containing an arbitration clause. Were we to adopt Aircraft Braking Systems' position, we would in effect be overruling a prior holding of this Court, an activity in which we will not engage.
 
 
 46
 Aircraft Braking Systems also claims that the district court erred in remanding this case to a new arbitrator. It does not dispute that the district court has the power to remand the case for another arbitration, nor does Aircraft Braking Systems dispute that the district court may, in some circumstances, remand to a new and different arbitrator for further arbitration proceedings. See Grand Rapids Die Casting Corp. v. Local Union No. 159, United Automobile, Aerospace and Agricultural Implement Workers of America, 684 F.2d 413, 416-17 (6th Cir.1982) (suggesting to the district court that remand should be to a different arbitrator because previous arbitrator's outburst compromised the appearance of impartiality); see also Hart v. Overseas Nat'l Airways, Inc., 541 F.2d 386, 393-94 (3d Cir.1976); Erving v. Virginia Squires Basketball Club, 468 F.2d 1064, 1067-68 (2d Cir.1972). Rather, Aircraft Braking Systems argues that remand to a new arbitrator is appropriate only where an arbitrator's actions compromise the appearance of impartiality. Further, Aircraft Braking Systems argues, contrary to the district court's conclusion on the issue, that remanding to a new arbitrator produces an unneeded inefficiency, because the former arbitrator is already familiar with the merits of the case.
 
 
 47
 We begin our analysis here by noting that district courts are usually afforded broad discretion in fashioning appropriate relief. Cf. Hart, 541 F.2d at 393-94 (remanding to the district court to "formulate an appropriate remedy to provide for the resolution of the parties' differences," including perhaps the appointment of a new arbitrator). The district court remanded this case to a new arbitrator because it believed that "by choosing to decide the threshold issue of arbitrability rather than the issue the parties submitted to him, and by ignoring Judge Bell's decision on that very issue, [the arbitrator] has indicated his feelings on the issue." The court also noted that remand to a new arbitrator in this case would not be inefficient because the arbitrator never reached the merits in the prior arbitration proceeding.
 
 
 48
 Here, the district court did not abuse its discretion. The arbitrator obviously did not believe himself bound by prior judicial resolution of the same issue in a lawsuit involving the same parties, nor did the arbitrator even discuss collateral estoppel in coming to a conclusion in direct conflict with a prior federal court holding. On these facts, the district court's decision to remand the case to a new arbitrator was correct. See Grand Rapids Die Casting, 684 F.2d at 416-17 (arbitrator's "outburst" clearly evinced negative attitude toward the language of the collective bargaining agreement); Erving, 468 F.2d at 1067-68 ("neutral" arbitrator was a member of the law firm representing one of the parties).
 
 
 49
 Finally, Aircraft Braking Systems takes issue with the district court's decision to award attorney's fees in favor of the union. We review the district court's award of attorney fees for abuse of discretion. Black v. Ryder/P.I.E. Nationwide, 970 F.2d 1461, 1472 (6th Cir.1992). Attorney's fees may be awarded in cases falling within Section 301 of the Labor Management Relations Act, if a party has acted in bad faith. In Shimman v. International Union of Operating Engineers, Local 18, 744 F.2d 1226 (6th Cir.1984), we set forth three categories of bad faith:
 
 
 50
 1) bad faith occurring during the course of the litigation;
 
 
 51
 2) bad faith in bringing an action or in causing an action to be brought; and
 
 
 52
 3) bad faith in the acts giving rise to the substantive claim.
 
 
 53
 Id. at 1230. Here, the district court characterized its findings as follows:
 
 
 54
 Plaintiff's actions in bringing this suit constitute a truly egregious case of misconduct. In the original 1993 proceedings, Defendant sought an award of attorney fees from Judge Bell who deferred the issue to Magistrate Judge Gallas. On March 31, 1994, the Magistrate Judge issued a report and recommendation finding in favor of Defendant on this issue. The Magistrate Judge held that:
 
 
 55
 Clearly [Aircraft Braking Systems'] position that there was no agreement to arbitrate was completely untenable and unjustified. There was bad faith in bringing this action.
 
 
 56
 ....
 
 
 57
 [Aircraft Braking Systems] attempted to prevent this arbitration with no legal or factual basis for its complaint. There was bad faith and the fact that Judge Bell gave this case priority so that arbitration was not delayed does not excuse [Aircraft Braking Systems].
 
 
 58
 Even after this recommendation, Plaintiff opposed arbitration of the grievance involved in the instant case, maintaining that there was no agreement to arbitrate. Plaintiff then unilaterally submitted the issue of arbitrability to the arbitrator, in an attempt to attain a better result after having lost two court proceedings on the same issue and after having been found to have acted in bad faith by Magistrate Judge Gallas. In maintaining that there was no [collective bargaining agreement] compelling arbitration, Plaintiff violated both this Court's refusal to enjoin arbitration of Grievance # A-8712 and Judge Bell's original decision holding there was an interim agreement to arbitrate, which has since been affirmed by the Sixth Circuit Court of Appeals.... When the arbitrator decided there was no agreement to arbitrate, Plaintiff sought this Court's confirmation of the arbitration proceeding to which Plaintiff had protested every day of the hearing.
 
 
 59
 Aircraft Brakings Systems takes issue with the district court award, although it merely claims to this Court that "there is a basis regarding the arbitrability of the issue in this case and the distinctions between this case and the case decided by Judge Bell." It has provided no analysis to support this claim. Of course, this is understandable, because Aircraft Braking Systems has no legal foundation to support its claim that Judge Bell's decision did not uphold the interim contract. Moreover, its continued insistence that no agreement exists is clearly contrary to this Court's holding in Aircraft Braking Systems I, which affirmed Judge Bell's conclusion that an interim agreement existed between the parties. In light of this, we affirm the district court's award of attorney fees in favor of the Union. Moreover, we remand this case to the district court in order that the court may award the cost of reasonable attorney's fees incurred by the Union in this appeal.
 
 
 60
 The district court's order vacating the arbitration award, remanding this grievance to a new arbitrator, and awarding attorney fees in favor of the Union is AFFIRMED. The case is REMANDED so that the district court may award the cost of attorney's fees incurred by the Union as a result of Aircraft Braking Systems' unfounded and bad faith appeal.
 
 
 
 *
 The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The parties proceeded to arbitration after the expiration of the prior collective bargaining agreement no less than thirty-three times prior to Aircraft Braking Systems I. Indeed, Judge Bell's district court opinion mentioned that the parties had scheduled an unrelated arbitration for the day following the hearing on Aircraft Braking Systems' motion for a preliminary injunction in Aircraft Braking Systems I
 
 
 [2]
 The district court mentioned both res judicata and collateral estoppel as grounds for barring relitigation of this issue. Specifically, collateral estoppel applies here, although the doctrines are closely intertwined. Moreover, the differences between them are irrelevant for the purposes of determining whether an arbitrator is obliged to give preclusive effect to a prior court decision between the same parties. Under res judicata doctrine, a judgment on the merits bars a second suit between the same parties or their privies based on the same cause of action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). Collateral estoppel usually applies when the second suit is on a different cause of action, and the judgment in the prior suit precludes relitigation of issues actually litigated in, and necessary to the outcome of, the first case. Id. In this case, because Aircraft Braking Systems sought to enjoin two entirely different grievances, collateral estoppel is the appropriate doctrine to be applied